NORTHWESTERN NATIONAL BANK
SOUTHWEST, Respondent,

v.

LECTRO SYSTEMS, INC., et
al., Defendants,

Charles Cox, Appellant.

No. 46811.

Supreme Court of Minnesota.

Aug. 12, 1977.

Rehearing Denied Sept. 15, 1977.

Gray & Gray and Milton Gray, St. Paul,
for appellant.

Larkin, Hoffman, Daly & Lindgren and
Robert J. Hennessey, Minneapolis, for re-
spondent.

Heard before PETERSON, TODD, and
YETKA, JJ., and considered and decided by
the court en banc.

PETERSON, Justice.

Plaintiff, Northwestern National Bank Southwest (bank), instituted this declaratory judgment action for a determination that its security interest in certain property of defendant, Agate Alarm and United States Security, Inc. (Agate), had priority over the claims of defendants Lectro Systems, Inc. (Lectro), Charles Cox, William Kalkbrenner, and the United States.[1] The trial court granted a partial summary judgment in favor of plaintiff. Defendant Cox appeals. We affirm.

The collateral at issue consists of proceeds from a contract between St. Paul Public Schools, Independent School District No. 625, and Lectro for the installation of a security system. Lectro had subcontracted with Agate and Kalkbrenner, a substantial shareholder of Agate, for performance of some of the contractual obligations. Agate, who had rights to purchase and install "Mardix" security equipment, agreed to obtain such equipment for the school district and to furnish all labor necessary for its installation. Lectro agreed to supply funds to acquire equipment and materials. Kalkbrenner agreed to supervise performance of the contract. By October 22, 1973, partial payment was due and owing from the school district. On that date, Agate and Kalkbrenner assigned to Cox $14,551.72 of the amount due them on the contract with Lectro. Lectro in turn assigned to Cox $14,551.72 of the amount due it from the school district. This amount represented loans advanced to Agate and Kalkbrenner by Cox and secured by the proceeds from the contract and by no other collateral. A financing statement covering this collateral had been filed on April 5, 1973.

The school district issued its check as partial payment on the contract in the amount of $14,551.72 payable jointly to Cox and Lectro. Thereafter, the bank notified Cox and Lectro that it claimed a prior interest in these proceeds by virtue of a financing statement filed August 11, 1972. Lectro placed the funds in escrow, refusing to pay the proceeds to the bank or endorse the funds to Cox. The bank then instituted this action, and the trial court determined that the bank had priority over the other claimants in whatever amounts were in fact due to Agate. The court refused to enter summary judgment with respect to other issues, having concluded that litigation was necessary to determine the amount in fact due to Agate in the face of setoffs asserted by Lectro, as well as to determine the relative priorities between Cox and the United States.

The principal issue on appeal is whether the trial court erred in finding that no genuine issue of fact was presented with respect to whether Cox's security interest was a purchase money security interest. By characterizing his interest as a purchase money security interest, Cox seeks to benefit by an exception to the general rule that priority is determined by order of filing. Minn.St. 336.9—312(3), (4), and (5)(a). Under this general rule, plaintiff's interest would be prior. To prevail, Cox's interest must fit within the definition embodied in Minn.St. 336.9—107(b):[2]

"A security interest is a 'purchase money security interest' to the extent that it is

\*　　\*　　\*　　\*　　\*　　\*

"(b) taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used."

In opposition to plaintiff's motion for summary judgment, Cox filed an affidavit containing the following deposition testimony:

"Q. Mr. Cox, with respect to Schedule A, it refers to an agreement between Agate and Lectro Systems dated in November of '72 for the installation of security systems in the St. Paul school dis-

---

1. The United States asserts a tax lien.

2. It is clear that Cox's interest does not fall within Minn.St. 336.9—107(a), which applies to an interest "taken or retained by the seller of the collateral to secure all or part of its price."

trict. And what I'd like to know is how was that particular receivable chosen as the security for your note or the moneys you advanced to Agate?

"A. · How was that chosen?

"Q. Yes.

"A. How was that selected?

"Q. Yes.

"A. Because this was the only one, to my knowledge, that was going to represent anything substantial, and it would represent, as far as my information at the time was, it would represent a situation where—a situation where Agate could get well and healthy and be a flourishing business.

\*    \*    \*    \*    \*    \*

"Q. You indicated in response to a question from Mr. Hennessey that you had advanced money to Agate Company so that it could stay alive. Now, at that time you were aware of Agate's contract with Lectro Systems?

"A. Yes, I was.

"Q. And was this money then advanced to Agate so that it could perform its contracts with Lectro Systems?

"A. Yes."

■ The definition of purchase money security interest under Minn.St. 336.9—107(b) contemplates that the loaned funds be intended, and actually used, for the purchase of an identifiable asset [3] which stands as the secured party's collateral. Cox has identified no such asset; the performance of a contract is not one, nor is a debtor's financial well-being. This is not a case in which funds were advanced and used for purchase of a receivable; the contract was already in existence between Agate and Lectro when Cox loaned funds to Agate and entered into a security agreement with it. Cox does not allege that the funds were given to purchase the "Mardix" security equipment; indeed, the contract between Lectro and Agate provides that Lectro will finance the acquisition of necessary equipment.

In the sense that Cox attempts to apply this definition, virtually *all* secured loans, plaintiff's included, would be secured by purchase money security interests: They are all given to enable the debtor to conduct his business and generate profit. Cox has not stated facts sufficient to raise a genuine issue as to whether his security interest is a purchase money security interest.

For the first time on appeal, Cox raises the additional argument that there has been no showing that the escrowed funds represent "net profits" owing to Agate and subject to the asserted security interests. Rather, Cox suggests that the funds might be reimbursement to Agate for expenditures for materials and services, or that part might be payment of the $5,000 due Kalkbrenner for services under the contract. Cox has a security interest in proceeds of the contract payable to Kalkbrenner; plaintiff does not.

■ Cox may not raise new issues on appeal. On the record before the trial court, all parties apparently treated the funds as subject to the claimed security interests and introduced no facts to show otherwise; neither Agate nor Kalkbrenner opposed plaintiff's motion for summary judgment.

■ Finally, Cox argues that Minn.St. 336.9—318(3) authorized Lectro to make payments to Cox prior to receiving notification from the bank. The argument is specious. Minn.St. 336.9—318(3) provides:

"The account debtor is authorized to pay the assignor until the account debtor receives notification that the amount due or to become due has been assigned and that payment is to be made to the assignee. A notification which does not reasonably identify the rights assigned is ineffective. If requested by the account debtor, the assignee must seasonably furnish reasonable proof that the assignment

---

**3.** The identifiable asset may theoretically be either tangible or intangible property, although as a practical matter, purchase money security interests are rarely found in intangibles. See, Gilmore, *The Purchase Money Priority*, 76 Harv.L.Rev. 1333, 1372.

has been made and unless he does so the account debtor may pay the assignor." The provision is not applicable to this case. It is intended to protect the debtor in the situation where the secured creditor has assigned its security interest. The debtor will not be held in default if he pays the original creditor before receiving notice that that party has assigned its interest. In this case, the debtor is the would-be "assignor." It is axiomatic that a debtor cannot transfer a greater interest in collateral than he owns. Agate cannot free from a security interest sums due it merely by arranging to have the sums paid directly to another. As the trial court stated:

"So far as can be ascertained from reading the file, Cox's claims against Lectro wholly rest upon his claims against Agate. If that is true, his security interest and rights are subordinate to those of the Bank and cannot be defeated merely by refusing to look through the form of a part of a transaction to discover its substantive reality."

Affirmed.

OTIS, J., took no part in the consideration or decision of this case.