**In the Matter of WOODWORKS CONTEMPORARY FURNITURE, INC., Debtor.**

**Bankruptcy No. MM7–83–00642.**

United States Bankruptcy Court, W.D. Wisconsin.

Dec. 20, 1984.

David E. Smithson, Madison, Wis., for debtor.

Mark W. Binkley, Madison, Wis., for Independence Bank Madison, Hauser Law Offices, S.C.

Michael Kepler, Madison, Wis., trustee.

## OPINION AND ORDER

ROBERT D. MARTIN, Bankruptcy Judge.

This is a chapter 7 case in which Independence Bank Madison ("Independence Bank") has moved for termination of the automatic stay and abandonment of a bank account. The trustee has objected. The matter has been fully and ably briefed by counsel.

Debtor, Woodworks Contemporary Furniture ("Woodworks") entered into a lease with the Equitable Life Assurance Society ("Equitable") on September 30, 1982. The lease provided that upon completion of certain conditions by Woodworks, including finishing leasehold improvements, Woodworks would receive a construction allowance of $31,000.00 ("the construction allowance").

On October 15, 1982 Woodworks granted Independence Bank a security interest in all accounts and contract rights then owned

or thereafter acquired by Woodworks. Independence Bank in turn advanced $50,-000.00 to Woodworks on a promissory note dated October 5, 1982. A duly executed financing statement covering the collateral was recorded with the Wisconsin Secretary of State.

On November 19, 1982, Woodworks borrowed the sum of $31,000.00 from the Valley View Bank to pay for the leasehold improvements under its lease with Equitable. Woodworks gave the bank its promissory note and granted the bank a security interest in the construction allowance. The security interest was never perfected.

In February or March, 1983, Woodworks received the construction allowance from Equitable and deposited it in an account at Randall Bank, Madison, Wisconsin. On April 25, 1983, Woodworks filed for bankruptcy under chapter 11. The case was thereafter converted to chapter 7. At the time of the conversion, the balance in the Randall Bank account totalled approximately $7,200.00. Valley View Bank's claimed lien on the construction allowance was avoided under 11 U.S.C. § 544 on September 19, 1983. Independence Bank has moved for relief from the automatic stay or an order for abandonment of the account containing the construction allowance. The trustee has resisted the motion on the grounds that the Valley View Bank lien was a purchase money lien and may be preserved as prior to the lien of Independence Bank for the benefit of the estate.

The trustee asserts that when Valley View Bank loaned money to Woodworks it was granted a purchase money security interest under section 409.107(2) in Woodwork's right to receive the $31,000.00 under a contract. WIS.STAT. § 409.107 provides,

A security interest is a 'purchase money security interest' to the extent that it is:

. . . .

(2) Taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used.

The trustee argues that: "although traditionally the only type of purchase money security interest the law has concerned itself with is that in goods, there is no reason why the purchase money concept should not apply to intangible property such as contract rights," citing *Gilmore*, The Purchase Money Priority, 76 Harvard Law Review 1333, 1374. Independence Bank argues that Valley View's loan to Woodworks cannot be a purchase money security interest because the funds were used *to perform* a preexisting executory contract, not *to purchase* rights under a contract.

Both parties cite *Northwestern Nat. Bank v. Lectro Systems, Inc.*, 262 N.W.2d 678 (Minn.1977) in support of their positions. In that case Northwestern had taken a security interest in various things belonging to Lectro (not specified in the decision) and filed a financing statement covering its interests. A year later Lectro contracted with St. Paul Public Schools to install a security system. Lectro then subcontracted with Agate Co. to obtain equipment and furnish the labor. Lectro agreed to supply the funds to acquire the equipment. Agate assigned the amount due on its contract with Lectro, $14,551.72, to Cox for loans advanced to Agate. Lectro in turn assigned the amount due it from St. Paul Public Schools, $14,551.72 to Cox. A financing statement covering the collateral was filed. St. Paul Public Schools issued a check in the amount of $14,551.72 payable jointly to Lectro and Cox. Northwestern claimed a prior interest in the proceeds by virtue of its prior financing statement. Cox argued that he had a purchase money security interest under Minn.St. 336.9–107(b), and therefore had priority over Northwestern under Minn.St. 336.9–312. (U.C.C. § 9–312(4)). Minn.St. 336.9–107(b) is identical to WIS.STAT. § 409.107. In a motion for summary judgment the court held,

The definition of purchase money security interest under Minn.St. 336.9–107(b) contemplates that the loaned funds be intended, and actually used, for the purchase of an identifiable asset which stands as the secured party's collateral. Cox has identified no such asset; the performance of a contract is not one, nor is a debtor's financial well-being. This is not a case in which funds were advanced and used for purchase of a receivable; the contract was already in existence between Agate and Lectro when Cox loaned funds to Agate and entered into a security agreement with it....

In the sense that Cox attempts to apply this definition, virtually *all* secured loans ... would be secured by purchase money security interests: They are all given to enable the debtor to conduct his business and generate profit. Cox has not stated facts sufficient to raise a genuine issue as to whether his security interest is a purchase money security interest.

262 N.W.2d at 680 (footnote omitted).

The trustee seeks to differentiate *Northwestern* from the instant case because the instant case involves a loan given for the specific purpose of fulfilling the contract, not for general working capital. That distinction is not compelled by the facts of the cases. The loan involved in *Northwestern* was in fact very similar to the loan involved in the instant case. They were both issued so that the borrowers could perform preexisting contracts.

While *Northwestern* is not controlling in this jurisdiction, that court interpreted statutes identical to the ones at issue here. Valley View's loan to Woodworks enabled Woodworks to fulfill its contract with Equitable, but did not enable Woodworks to "acquire rights in" the contract to which it was already a party. Therefore, Valley View's loan was not secured by a purchase money security interest under WIS.STAT. § 409.107.

Having held on the basis of the facts of this case that the lien of Valley View was not entitled to the superpriority afforded purchase money liens by the Uniform Commercial Code as enacted in Wisconsin, consideration of the trustee's contention that defects are corrected in a lien preserved under 11 U.S.C. § 551 may be dealt with summarily. The defect in Valley View Bank's lien when that lien is claimed to have a purchase money superpriority is not merely technical as to the time or manner of perfection, but rather goes to the very nature of the lien asserted. However substantial the powers of the trustee to preserve an avoided lien free of the technical defects, when a lien by its very nature is not securing purchase money, that lien cannot be reinvented as one securing a purchase money loan.

Having thus determined that the trustee's objection to the motion of Independence Bank is without merit, the motion must be granted. It is therefore

ORDERED that the motion of Independence Bank for abandonment and relief from stay to pursue its lien against proceeds of the construction allowance held in an account at Randall Bank is hereby granted.