**UNITED STATES of America, Plaintiff,**

v.

**John H. BALLARD and Patsy G. Ballard; Donald D. Spears d/b/a Spears Electric; First Citizens Bank of Butte, a Montana Banking Corporation, Defendants.**

**No. CV–83–061–BU–PGH.**

United States District Court,
D. Montana,
Butte Division.

Oct. 10, 1986.

Robert J. Brooks, Asst. U.S. Atty., Dist. of Mont., Butte, Mont., for plaintiff.

W.D. Murray, Jr., Butte, Mont., for First Citizens Bank of Butte.

## MEMORANDUM AND ORDER

HATFIELD, District Judge.

The present action involves conflicting security interests in livestock and fixtures. The parties have submitted this case to the court on agreed facts and the evidence contained in documents attached to both the final pretrial order and to the parties' respective pleadings. This court has jurisdiction in that the United States of America is the party plaintiff.

## FACTS

The defendant, First Citizens Bank of Butte ("the Bank"), began lending money to John and Patsy Ballard ("the Ballards") on or about April 28, 1980. The loans went towards funding the establishment and operation of the Ballard Dairy. On or about June 18, 1980, the Ballards borrowed additional operating funds from the Bank and, as security, gave the Bank a first security interest in all their equipment and livestock then owned or thereafter acquired. The Bank perfected its interest by filing a financing statement with the Clerk and Recorder's office in Jefferson County, Montana on June 25, 1980.

Plaintiff, the United States, acting through the Farmers Home Administration ("FmHA"), U.S. Department of Agriculture, made the following loans to the Ballards: 1) a farm ownership loan of $197,660, 2) an operating loan of $97,750, and 3) an economic emergency loan of $150,000. In return for the farm ownership loan, the Ballards executed and delivered to the FmHA a real estate mortgage covering land situated in Jefferson County. The FmHA filed that mortgage with the Jefferson County Clerk and Recorder on September 3, 1980. To secure the other two loans, the Ballards gave FmHA a security interest in all their livestock, farm machinery, and equipment. The FmHA perfected its security interest by filing a financing statement with the Jefferson County Clerk and Recorder on September 24, 1980.

On June 21, 1982, the Ballards declared bankruptcy under 11 U.S.C. Chapter 7. Thereafter, pursuant to its security interest and a Bankruptcy Court's judgment, the Bank took possession of certain items of collateral from the Ballards' farm, all of which were later resold. The dispute in the instant case is whether the Bank wrongfully repossessed some of the collateral, specifically a milk tank and certain livestock.

With respect to the livestock at issue, the FmHA claims it had a purchase money security interest in livestock the Ballards purchased between September 24, 1980, and October 12, 1980. The Bank asserts it

had a continuing perfected first security interest in all the Ballards' livestock with the FmHA's knowledge and consent.

The second dispute before the court involves a milk tank which had been bolted to the floor of the Ballards' milk barn. The FmHA claims the Bank wrongfully repossessed the milk tank because it was affixed to the realty and, therefore, came under its mortgage of August 29, 1980. The Bank asserts its security interest in the tank attached when it was equipment and thereafter continued as a perfected interest even after the tank was bolted to the floor.

ISSUES

1. Did the Bank have a valid perfected security interest in the Ballards' livestock and equipment?

2. If so, does the FmHA have a purchase money security interest in some of the Ballards' livestock that takes priority over the Bank's security interest?

3. Did the Bank's security interest in equipment, specifically the milk tank, continue even though the tank was subsequently affixed to real property?

DISCUSSION

Plaintiff alleges the June 19, 1980, security agreement between the Bank and John Ballard failed to create a valid security interest and cites numerous alleged defects in the security agreement. As discussed below, however, this court finds no merit in plaintiff's allegations.

First, plaintiff alleges the security agreement does not include farm products as collateral. Plaintiff fails to cite any authority for its position and, furthermore, overlooks that the security agreement in question covered "all livestock ... now owned or hereafter acquired...." Furthermore, a description of collateral is sufficient if it reasonably identifies what it describes. § 30–9–110 M.C.A. (1985) and Official Comments. The security agreement's language reasonably identified the livestock that were subject to the security interest and, therefore, was sufficient.

Second, plaintiff asserts the security agreement is facially invalid because of some allegedly contradictory language. However, plaintiff failed to present any authority or evidence to support its position and, therefore, its contention is rejected.

Third, plaintiff claims the Bank's security agreement only attached to the extent of John Ballard's rights in the collateral because Patsy Ballard did not sign the security agreement. Plaintiff asserts there is no indication John Ballard had exclusive rights in the collateral and, therefore, the Bank's security agreement did not attach to Patsy Ballard's interest in the collateral and to that extent is unenforceable.

In support of its position, plaintiff cites *In re Rex Printing*, 14 B.R. 403 (Bkrtcy.N.D.Ind.1981). In that case, a creditor filed a financing statement under the names of a corporation and two individuals. However, the secured property belonged to the corporation, which had not signed the security agreement. The corporation thereafter filed for bankruptcy and the court held the creditors of the two individuals were unperfected vis-a-vis the corporation which had not signed the security agreement. *In re Rex Printing*, 14 B.R. at 405. The facts of *In re Rex Printing* are clearly distinguishable from the instant case and the court finds it unpersuasive.

Section 30–9–402 M.C.A. (1985) sets forth the requirements for a financing statement.

A financing statement sufficiently shows the name of the debtor if it gives the individual, partnership or corporate name of the debtor, whether or not it adds other trade names or the names of partners.

Section 30–9–402(7) M.C.A. (1985). Furthermore, § 30–9–402(8) M.C.A. (1985) provides

"a financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading.

In the instant case, John Ballard signed the security agreement of June 19, 1980, and gave the Bank a security interest in

the livestock and equipment on his land in Jefferson County.

■ Plaintiff has failed to set forth any concrete evidence that Patsy Ballard had any interest in the collateral in question. Marital status alone is not sufficient to prove an ownership interest in property. *In re Wolsky*, 53 B.R. 751 (Bkrtcy.D.N.D. 1985), citing *In re Asbridge*, 45 B.R. 564, 565 (Bkrtcy.D.N.D.1984). Montana has not adopted the community property concept and, therefore, property can be owned and separately controlled by one spouse without the permission of the other. *Sowell v. Teachers' Retirement System*, 693 P.2d 1222, 1226; 41 St.Rptr. 2413, 2417 (1984). The court is of the opinion that the signature of John Ballard on the security agreement was sufficient notice to interested parties that the Bank was claiming a security interest in the livestock and equipment on the land in Jefferson County, Montana.

■ When all the evidence is considered, it is clear that the Bank has a valid perfected security interest creating a superior first lien on all equipment and livestock owned and thereafter acquired by the Ballards. This is especially true in light of the letter from Lyle Seaman, the FmHA's former County Supervisor, attached to defendants' Answer as Exhibit 4. In that letter, Seaman admits it was the FmHA's intention that the Bank have a first security interest in all the Ballards' livestock and equipment then owned or thereafter acquired. Plaintiff has attempted to escape the effects of Seaman's admission by alleging the Bank's security agreement was defective. However, as discussed above, this court rejects those allegations and holds the Bank's security agreement of June 19, 1980, gave it a valid first lien on the Ballards' livestock and equipment then owned or thereafter acquired.

The question then becomes whether the FmHA can successfully assert a purchase money security interest in certain livestock and thereby take priority over the Bank's security interest. A purchase money security interest, as defined in § 30-9-107(b),

M.C.A. (1985), includes an interest "taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used." A purchase money security interest in collateral other than inventory takes priority over a conflicting security interest in the same collateral provided it is perfected at the time the debtor receives possession of the collateral or within 20 days thereafter. § 30-9-312(4), M.C.A. (1979).

In the instant case, the FmHA perfected a security interest in livestock and farm equipment by filing a financing statement on September 24, 1980. Therefore, in order for the FmHA to attain purchase money secured status and take priority over the Bank's security interest, it must show that the money lent was in fact used to acquire an interest in the collateral in question, namely the livestock. *See*, Official Comments, § 30-9-107, M.C.A. (1979); *Northwestern National Bank Southwest v. Lectro Systems, Inc.*, 262 N.W.2d 678 (Minn. 1977).

In *Northwestern National Bank Southwest, supra*, the Minnesota Supreme Court addressed the issue of whether a creditor's secured interest was a purchase money security interest. Minnesota's statute defining a purchase money security interest is identical to § 30-9-107(b), M.C.A. (1979). According to the Minnesota Supreme Court,

> the definition of purchase money security interest ... contemplates that the loaned funds be intended, and actually used, for the purchase of an identifiable asset which stands as the secured party's collateral.

*Northwestern National Bank Southwest*, 262 N.W.2d at 680.

■ This court agrees with the Minnesota Supreme Court's interpretation of the requirements to attain purchase money secured status as set forth in *Northwestern National Bank Southwest v. Lectro Systems, Inc.*, 262 N.W.2d 678 (Minn.1977). In the instant case, the FmHA has failed to

prove that the funds it loaned to the Ballards were intended, and actually used, for the purchase of identifiable livestock.

As discussed earlier, the statement of Lyle Seaman, FmHA's former County Supervisor, clearly shows it was the FmHA's intention that the Bank have a first security interest in all the Ballards' collateral. Regardless of the Bank's first lien, the FmHA could have established a purchase money interest by documenting which livestock the Ballards purchased with FmHA loan funds. However, it seems clear that the FmHA failed to maintain any record of what was purchased with its loan funds.

The only evidence the FmHA produced to establish its purchase money status were copies of checks drawn from their controlled checking account with the Ballards. The dates on those checks range from September 18, 1980, to July 20, 1981. However, no copies of any bills of sale have been introduced to show when John Ballard took possession of the livestock in which the FmHA is claiming a purchase money security interest.

■ Based on the evidence before it, this court believes the FmHA never intended to acquire a purchase money interest in the Ballards' livestock. First, Lyle Seaman's statement clearly shows the FmHA intended that the Bank have a first lien on Ballards' collateral. Second, the FmHA failed to document what was purchased with the loan funds. The court feels the cancelled checks alone are insufficient proof that the Ballards actually purchased and took possession of livestock. Therefore, the court holds the FmHA does not have a purchase money security interest in livestock purchased by the Ballards between September 24 and October 12, 1980, and the Bank's security interest takes priority as to all the Ballards' livestock and equipment.

The third issue before the court is a priority dispute over the milk tank. The FmHA contends the tank became a fixture when it was bolted to the milk barn's floor and, therefore, was covered by its real estate mortgage of August 29, 1980. On the other hand, the Bank asserts the tank was initially "equipment" and that it had a perfected security interest in all the Ballards' present and future acquired equipment on June 25, 1980. Therefore, the Bank claims its security interest attached before the tank became a fixture which gives it priority under § 30–9–313(2), M.C.A. (1979).

As set forth in the final pretrial order, the Ballards purchased the milk tank with Bank funds. Furthermore, as discussed above, the Bank had a valid first lien on all the Ballards' present and future acquired livestock and equipment from and after June 25, 1980. The milk tank was clearly equipment, at least until it was bolted to the floor of the milk barn.

Section 30–9–313, M.C.A. (1979), governs the priority of security interests in fixtures. Subsection (2) of that statute provides:

> A security interest which attaches to goods before they become fixtures takes priority as to the goods over the claims of all persons who have an interest in the real estate except as stated in subsection (4).

None of the exceptions in subsection (4) apply to the facts in the instant case. Therefore, the sole remaining question is whether the Bank's security interest attached to the milk tank before it became a fixture.

■ Section 30–9–204, M.C.A. (1979), governs the attachment of a security interest. A security interest attaches when: 1) the debtor signs a security agreement; 2) value is given; and 3) the debtor has rights in the collateral. In the instant case, it is clear that the above requirements were met and the Bank's security interest attached before the tank was bolted to the milk barn's floor. Therefore, since the Bank's security interest attached before the tank became a fixture, the Bank has priority under § 30–9–313(2), M.C.A. (1979). Furthermore, based on its prior interest, the Bank was justified in repossessing the tank from the Ballards' property.

Therefore, based on the above discussion, JUDGMENT is hereby entered for the

defendant First Citizens Bank of Butte. The Clerk is directed to enter judgment accordingly.