The TOWNSHIP OF STAMBAUGH, a municipal corporation of the State of Michigan, Plaintiff,

v.

AH–NE–PEE DIMENSIONAL HARD-WOOD, INC., a Florida corporation, and ANP Dimensional Lumber Michigan, Inc., a Minnesota corporation, Defendants.

No. 2:92–CV–81.

United States District Court, W.D. Michigan, N.D.

Jan. 23, 1993.

Mark D. Tousignant, Allen J. Rittenhouse, Mark D. Tousignant, PC, Iron River, MI, for plaintiff.

D. Gregor MacGregor, III, Kendricks, Bordeau, Adamini, Keefe, Smith & Girard, Marquette, MI, Peter Lancaster, Dorsey & Whitney, Minneapolis, MN, for defendants.

## OPINION

QUIST, District Judge.

This case is a diversity action. Plaintiff, the Township of Stambaugh (Township), is a municipal corporation of the State of Michigan. Defendant Ah–Ne–Pee Dimensional Hardwood, Inc. is incorporated in Florida and has its principal place of business in Wisconsin. Defendant ANP Dimensional Lumber Michigan, Inc. is incorporated in Minnesota and has its principal place of business in either Minnesota or Wisconsin. More than $50,000 is in controversy. This action involve a dispute over the priority of different security interests in real and personal property.

## FACTS

Ah–Ne–Pee Dimensional Hardwood, Inc. (Hardwood) manufactures wood products. In the late 1970s, Hardwood began operating from a facility in Ogema, Wisconsin. In the late 1980s, Hardwood decided to expand its operations and open a second facility in Michigan. The new facility was financed by a $200,000 loan from Miners State Bank, a $625,000 loan from the Township, and $125,000 of owner equity.

On January 20, 1989, Miners State Bank loaned Hardwood $200,000 in exchange for a Promissory Note. The Promissory Note was secured by a mortgage on real property located in the Township of Stambaugh, Michigan. On January 26, 1989, the mortgage was recorded. Additionally, the Promissory Note was secured by a Security Interest in equipment and personal property located at the Michigan facility. The Security Interest included an after-acquired property clause and a future advances clause.[1] That Security

1. 1. SECURITY INTEREST GRANT—The Borrower, in consideration of its liabilities, as hereinafter defined, hereby agrees to all of the terms of this agreement and further hereby specifically grants the Lender a continuing security interest in the collateral shown in the boxes checked above [All Assets] (and described in the paragraph below) including the products thereof to secure the payment of all loans, advances, and extensions of credit from the Lender to the Borrower, including all renewals and extensions thereof and any and all obligations of every kind whatsoever, whether heretofore, now, or hereafter existing or arising between the Lender and the Borrower and howsoever incurred or evidenced, whether primary, secondary, contingent, or otherwise. The grant of security interest herein shall apply to all obligations, whether they arise hereunder, under any other mortgage, security agreement, note, lease, instrument contract, document or other similar writing heretofore, now, or hereafter executed by the Borrower to Lender, including oral agreements and obligations arising by operation of law. The foregoing obligations shall be hereafter collectively called the "Liabilities" and shall also include all interest, costs, expenses, and attorney's fees accruing to or incurred by the Lender in collecting the Liabilities or in the protection, maintenance, or liquidation of the Collateral.

2. DESCRIPTION OF COLLATERAL—The "Collateral" covered by this agreement is all of the Borrower's property described below, with regard to which a check mark has been placed in the applicable box above, which the Borrower now owns or may hereafter acquire or create and which may include, but shall not be limited to, any items listed on any schedule or list attached hereto:

A. ALL ASSETS—"All Assets" of the Borrower shall include all of the tangible and intangi-

Interest was perfected by filing Financing Statements with the Michigan Secretary of State on February 6, 1989, March 7, 1989, and September 25, 1989. The Township contends that Hardwood used the loan proceeds for building renovations and as a down payment on equipment.

On September 22, 1989, the Township loaned defendant Hardwood $625,000 in exchange for a Promissory Note. This loan was made pursuant to the United States Department of Urban Development's Economic Development Implementation Grant. The Promissory Note was secured by a Mortgage on the same real property as the Promissory Note given to Miners State Bank. Miners State Bank agreed to subordinate its interest in the real property to the Township's interest.[2] In addition, this Promissory Note was secured by an interest in all tangible and intangible personal property and fixtures located at the Michigan facility. However, unlike the real property mortgage, the Township did not obtain a subordination of Miners State Bank's Security Interest in the personal property. Like the Miners State Bank's Security Interest, the Township's Security Interest also contained an after-acquired property and future advances clauses.[3] The Township's Security Interest

---

ble property of the Borrower of whatsoever nature now owned or hereafter acquired by the Borrower, including, but not limited to, accounts, inventory, equipment, and instruments as defined herein.

**2.** *MORTGAGE SUBORDINATION AGREEMENT*

The Township of Stambaugh, a Michigan municipal corporation, of P.O. Box 545, Caspian, Michigan 49915 (hereinafter "the Township"), desires to lend the sum of Six Hundred Twenty Five Thousand ($625,000.00) Dollars to Ah-Ne-Pee Dimensional Hardwoods, Inc., a Florida corporation, of Route 2, Box 131, Ogema, Wisconsin 54459 (hereinafter "the Borrower"). This loan is to be secured by a first mortgage on certain real estate located in Stambaugh Township, Iron County, Michigan (hereinafter "the Property")
\* \* \* \* \* \*
Borrower has previously borrowed the sum of Two Hundred Thousand ($200,000.00) Dollars from the Miner State Bank of P.O. Box 351, Iron River, Michigan 49935 (hereinafter "the Bank"). This loan is secured by a mortgage given by the Borrower to the Bank, dated January 20, 1989, and recorded on January 26, 1989, in Liber 146 of Mortgages, Pages 482–485, in the office of the Register of Deeds for Iron County, Michigan. The aforementioned mortgage, prior to the execution of this subordination agreement, has a priority over a mortgage to be executed by the Borrower in favor of the Township to secure the aforementioned loan to be made by the Township.

The purpose of this agreement is to subordinate the existing mortgage of the Bank, described above, to a mortgage interest in the Property to be granted by the Borrower to the Township to secure an indebtedness of $625,000.00.

WHEREFORE, to induce the Township to lend the amount of $625,000.00 to the Borrower and in consideration of the covenants contained herein and other valuable consideration, the parties hereto agree as follows:

1. The Bank does hereby subordinate the priority interest of its existing mortgage, described above, to a mortgage on the Property to be given by the Borrower to the Township to secure a loan by the Township to the Borrower in the amount of $625,000.00.

**3.** *SECURITY AGREEMENT*

THIS SECURITY AGREEMENT is made the 22nd day of September, 1989, between THE TOWNSHIP OF STAMBAUGH, a Michigan municipal corporation, of P.O. Box 545, Caspian, Michigan 49915, hereinafter referred to as "SECURED PARTY", and AH–NE–PEE DIMENSIONAL HARDWOODS, INC., a Florida corporation authorized to do business in Michigan, of 1612 Bengal Road, Iron River, Michigan 49935, hereinafter referred to as "DEBTOR".

In consideration of the mutual rights, privileges, duties, and obligations, as expressed herein, the parties covenant and agree as follows:

2. *OBLIGATIONS SECURED:* The obligations secured by this SECURITY AGREEMENT are loans and advances from SECURED PARTY to DEBTOR according to the terms and tenor of a note provided for in a LOAN AGREEMENT, of even date herewith, between the parties, or any installment notes pursuant thereto, and any additional loans or advances which SECURED PARTY may elect to make to DEBTOR during the continued existence of this agreement with reference to the subject matter of the LOAN AGREEMENT.

2. [sic] *CREATION OF SECURITY INTERESTS:* For and in consideration of the current loans and advances made by SECURED PARTY to DEBTOR as set forth at paragraph 1, above, and to secure the repayment to the SECURED PARTY by the DEBTOR of the obligations secured by this instrument, as defined and specified at paragraph 1, above, the DEBTOR creates and grants unto the SECURED PARTY security interests in the collateral as defined and described at Schedule "A", attached hereto and made a part hereof by reference.

\* \* \* \* \* \*

was perfected by filing a Financing Statement with the Michigan Secretary of State on October 12, 1989—after Miners State Bank filed its Financing Statements.

The Township contends that Hardwood purchased a majority of its equipment shortly after Hardwood received the $625,000 loan from the Township.

In the summer of 1991, Hardwood was acquired by ANP Acquisition Corporation, a corporation wholly owned by Andrew Hunter and Robert Keith.

On July 8, 1991, Miners State Bank assigned its interest in its Promissory Note, Mortgage, and Security Agreement to defendant ANP Dimensional Lumber Michigan, Inc. (Lumber), a subsidiary of Dimensional Lumber Holdings—another corporation wholly owned by Andrew Hunter and Robert Keith. Miners State Bank received $159,-933.78 as compensation for the assignment. On July 10, 1991, this assignment was recorded. Dimensional Lumber Holdings earlier had purchased a note secured by equipment and personal property located at the Wisconsin facility.

The Township contends that Hardwood stopped making payments on the $625,000 Promissory Note after June 1991. The Township claims that defendant Hardwood is in default on the $625,000 Promissory Note because no one has made payments pursuant to the terms of the Note. As of March 23, 1992, $579,114.84 of principal and $41,840.40 of interest was owed on the Note.

In June 1991, Lumber executed a $500,000 note with Hardwood secured by Hardwood assets and real property. In July 1991, Lumber executed an additional $300,000 note secured by the January 20, 1989, security agreement between Hardwood and Miners State Bank. The July 1991 note was later increased to $800,000. Robert Keith claims that the money was loaned to pay Hardwood's vendors. The then president of Hardwood, Geron Verville, does not remember any consideration being exchanged for the note, and he stated that Lumber was funneling money through Hardwood to increase the amount of its security interest.

On March 26, 1992, the Township filed this lawsuit against defendant Hardwood seeking this Court to adjudge a foreclosure and sale of the mortgaged property to satisfy the Hardwood obligations to the Township. The Township also seeks a judicial determination against Hardwood as to who has priority in the personal property. The Township argues that it has a purchase money security interest in the equipment purchased shortly after extending the loan to Hardwood. The Township also seeks an order from this Court restraining both defendants from re-

SCHEDULE "A" TO SECURITY AGREEMENT BETWEEN TOWNSHIP
OF STAMBAUGH AND AH–NE–PEE DIMENSIONAL HARDWOODS, INC.,
DATED THE 22ND DAY OF SEPTEMBER, 1989

The Secured Party has a security interest in all tangible and intangible personal property and fixtures of the Debtor, with the exception of inventory and receivables, located in Iron County, Michigan, at present or in the future, including, but not limited to, all machinery, equipment, tools, fixtures, office equipment, intangibles (such as documents, chattel paper, instruments, contract rights, choses in action, but excepting receivables) non-titled vehicles, accessions, parts, attachments, accessories, appurtenances, as well as all substitutions, betterments, replacements, and the items of property more specifically described as follows, together with the proceeds thereof: Wadkin XJ Throughfeed Planer Moulder, Mellott Rough Log Deck, Mellott Model 200–6 Rosser Head Debarker (complete with combination starters, prewired electric components, hydraulic plumbing and air lines), Mellott Pealed 3 Strand Log Deck, Mellott Model 6 Log Turner, Mellott Hydraulic Power Pack, Cleereman Model 38 Automatic Carriage with attachments, Cleereman Sawhusk with attachments, Cleereman Modular Track Frame, Cleereman Sawyer Cab with attachments, Laser Lite and mounting bracket, Tyrone Model SMA225 Hydraulic Carriage Drive with 60HP 1800 RPM TEFC motor, McWhyte PFC cable, Mellott Belt Type Offbearer, Mellott 15' Drop Belt with two H.P. electric motor and drive, Mellott Jump Skid Transfer, Crosby 36 inch (2) Saw Edger with attachments, Laser Lite system for Crosby Saw Edger, Mellott Roof Top Transfer Deck, Crosby (2) Saw Trimmer, Mellott Green Chain, Mellott Vibrating Conveyer, Pacemaker 25 H.P. air compressor with attachments, Crosby Top Arbor Bull Edger with attachments, Mellott Transfer to Bull Edger from Drop Belt, Precision 3 knife 48 inch Chip Package with attachments, and five of each of the following: Dryline DL600 60 H.P. Dehumidifier, External "Capacity–Booster" Coil, Dryline Aluminum Transister Collars, Duct Diffuser, 350,000 BTU Copper-aluminum Steel Coils, Dryline Fibreglass Extraction Vent System with attachments.

moving property from the premises located in Stambaugh, Michigan.

On September 30, 1992, the Township filed a Motion for Summary Judgment. On October 1, 1992, defendant Lumber filed a Motion for Partial Summary Judgment.

## DISCUSSION

 Summary judgment is appropriate if there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. The rule requires that the disputed facts be material. Material facts are facts which are defined by substantive law and are necessary to apply the law. A dispute over trivial facts which are not necessary in order to apply the substantive law does not prevent the granting of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The rule also requires the dispute to be genuine. A dispute is genuine if a reasonable jury could return judgment for the nonmoving party. *Id.* This standard requires the nonmoving party to present more than a scintilla of evidence to defeat the motion. The summary judgment standard mirrors the standard for a directed verdict. The only difference between the two is procedural. Summary judgment is made based on documentary evidence before trial, and directed verdict is made based on evidence submitted at trial. 477 U.S. at 250–51, 106 S.Ct. at 2511. A moving party who does not have the burden of proof at trial may properly support a motion for summary judgment by showing the court that there is no evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). If the motion is so supported, the party opposing the motion must then demonstrate that there is a genuine issue of material fact for trial. *Id.* The Court must draw all inferences in a light most favorable to the non-moving party, but the Court may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Financial Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir.1992) (quoting *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

*Definition Of A Purchase Money Security Interest.*

 A creditor's right to recover from a debtor is ordinarily determined by the order in which the creditor perfects its security interest. However, the holder of a purchase money security interest is excepted from the general rule. The holder of a purchase money security interest takes priority over an interest acquired under an after-acquired property clause. Official U.C.C. Comment to § 9–107. This exception allows a creditor to extend money to a debtor to purchase collateral without the creditor being concerned with the debtor's prior debts. A purchase money security interest is defined in M.C.L.A. § 440.9107:

> A security interest is a "purchase money security interest" to the extent that it is (a) taken or retained by the seller of the collateral to secure all or part of its price; or
>
> (b) taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used.

Subsection (b) is disputed in this case. Subsection (a) does not apply because the Township is not the seller of collateral.

*A Purchase Money Security Interest Must Be In Identifiable Property.*

 A purchase money security interest requires that the person claiming the purchase money security interest intended to loan money for the purchase of the exact items in which one claims the purchase money security interest. The lender must demonstrate that the money given was "intended, and actually used, for the purchase of *identifiable*" collateral. *United States v. Ballard*, 645 F.Supp. 788, 792 (D.Mont.1986). *Ballard* held that the creditor "must show that the money lent was in fact used to acquire an interest in the collateral in question...." *Id.* at 791. *Ballard* involved a loan which the debtor used to purchase livestock. The court

stated that the creditor could have maintained a purchase money security interest in the livestock if the creditor had documented which livestock were purchased with the loaned money. The court stated that the creditor could not claim a purchase money security interest because it failed to maintain any records of what the debtor purchased with its funds.

The Minnesota Supreme Court interpreted the definition of a purchase money security interest more stringently. It stated that the loaned money must be "intended, and actually used, for the purchase of identifiable assets which stands as the secured party's collateral." *Northwestern National Bank v. Lectro Systems, Inc.*, 262 N.W.2d 678, 680 (Minn.1977). In *Northwestern National Bank*, the creditor loaned the money generally to acquire equipment and materials. However, the court did not allow the creditor to take a purchase money security interest in specific equipment—the "Mardix" security equipment. The court noted that the creditors' application of a purchase money security interest would give all secured creditors a purchase money security interest because all money is loaned to enable the lender to conduct business.

■ The Township does not have a purchase money security interest in the equipment acquired with the money it loaned to Hardwood because the Township did not loan the money for the purchase of specific, identifiable property. The Economic Development Grant Agreement between The Michigan Department of Commerce and the Township states that the grant funds "shall be used to make a $625,000 loan to Ah–Ne–Pee Dimensional Hardwood, Inc. for the purchase of equipment and working capital." Economic Grant Agreement p. 4. The security interest was defined as "a first position on the building and real estate and a second position of the new equipment." Economic Grant Agreement p. 12. The loan agreement never mentions specific equipment for which the loan money will be used to purchase. Instead, the Township relies on the deposition of Geron Venville, then president and chief executive officer of Ah–Ne–Pee, which identifies the equipment that was purchased with the Township loan money.

This Court believes that the holding of the Minnesota Supreme Court in *Northwestern National Bank* correctly states the law regarding a purchase money security interest. A purchase money security interest only exists if the loan was made for the purpose of purchasing specific property. Otherwise, all loans which result in the debtor purchasing collateral would have a purchase money security interest aspect—the purchase money security interest exception was not designed for such a purpose. This interpretation of the purchase money security interest prevents the Township from claiming a purchase money security interest because its loan agreement did not identify specific collateral to be purchased with the loan money. Instead, the loan agreement stated generally, as it did in *Northwestern National Bank*, that the loan money would be used to purchase equipment. As such, the Township does not have a purchase money security interest in the equipment purchased.

This Court believes that the holding of the Minnesota Supreme Court is relevant in determining how the Michigan courts would interpret M.C.L.A. § 440.9107, U.C.C. § 9–107 because both states have enacted the same Uniform Commercial Code provision. The purpose of establishing the Uniform Commercial Code, as the name implies, is to establish the same law in all states. Uniformity of laws entails the same judicial interpretation of the law, as well as the identical language.

*A Purchase Money Security Interest Does Not Exist If The Creditor Is Secured By More Than The Property Purchased With The Loan Money.*

■ A person claiming a purchase money security interest can only claim an interest in the collateral purchased with the loaned money. In *Marine Midland Bank v. United States*, 687 F.2d 395 (Ct.Cl.1982), the court defined a purchase money security interest lender as:

one who loans money for the acquisition of particular property and who takes back an interest *only* in that property.

687 F.2d at 402 n. 6 (emphasis added). The Eleventh Circuit stated that one who acquires a security interest in more than the property acquired with the loan money destroys the purchase money security interest. The court stated that a purchase money security interest requires a "one-to-one relationship between the debt and the collateral." *Southtrust Bank of Alabama, Nat. Ass'n. v. Borg–Warner Acceptance Corp.,* 760 F.2d 1240, 1243 (11th Cir.1985). In *Southtrust Bank,* the court noted that the plain language of the statute required the purchase money security interest to be in the collateral acquired, and the security interest could not exceed the price of the collateral. The court refused to recognize a purchase money security interest in property acquired with the loan money because the loan was secured by an after-acquired property clause and a future advances clause. *Id.*

■ The Township does not have a purchase money security interest in the equipment purchased because it took a security interest in more that the equipment—thus destroying any purchase money security interest it may have had. The Township's loan was secured by a mortgage on real property and all tangible and intangible personal property and fixtures located at the Michigan facility. The Security Interest in the personal property and fixtures located at the Michigan facility included an after-acquired property clause. As the Eleventh Circuit held in *Southtrust Bank,* this destroys the purchase money security interest. The Township does not qualify as a purchase money security interest lender because it took a security interest in more than the property which was purchased with the loan money.

*The Extent Of Lumber's Security Interest Is Disputed.*

Lumber's security interest in the equipment and personal property located at the Michigan facility has priority over that of the Township, yet the extent of that interest is in dispute. Lumber's security interest in the personal property and equipment at the Michigan facility is created by the Note and Security Interest it purchased from Miners State Bank. At the time Lumber purchased the Security Interest, the Security Interest secured $200,000. The Security Interest also contained a future advances clause which stated that the Security Interest could be used to secure future loans. Lumber claims that it made future advances to Hardwood totaling at least $800,000 evidenced by the July 3, 1991 Note. Lumber has provided affidavits from Robert Keith and Mark Somers, an accountant for Lumber and Hardwood. Keith's deposition states that cash advances were made to Hardwood so that Hardwood could satisfy the claims of trade creditors. He states that the advances were made in connection with a $300,000 note which was later increased to $800,000. Somers's deposition states that he reviewed the cash advances made to Hardwoods. His results show that other creditors' claims were paid with monies obtained through the cash advances. In addition, two documents have also been produced which intend to document cash advances made. However, the then president of Hardwood stated that Hardwood never received consideration for that Note and that Lumber was channelling money through Hardwood to increase its security interest. The motive for funnelling the money is self-evident because Andrew Hunter and Robert Keith own both Lumber and Hardwood. Moreover, Lumber owns a first priority interest in Hardwood via the Miners State Bank Security Interest. Lumber can increase its interest in the Hardwood equipment and personal property by making future advances to Hardwood, thus increasing its first priority interest in the equipment and personal property. Andrew Hunter and Robert Keith can maintain their rights to the equipment and personal property of Hardwood if they can increase the first priority security interest of Lumber. These advances are valid if, in fact, they occurred. On the other hand, these advances never existed if the Note was not supported by consideration—i.e. no money was advanced—and recognizing them would cheat secondary creditors out of their lawful right to the equipment and personal property to satisfy the secondary creditors defaulted loans. The Court recognizes that the extent of Lumber's purchase money security interest was not the focus of the cross-motions for summary judg-

ment. Therefore, the Court will permit the parties to file a new motion addressing only this issue.

## CONCLUSION

For the reasons stated, plaintiff's Motion for Summary Judgment is **DENIED,** and defendant's Motion for Summary Judgment is partially **GRANTED.** Defendant has a first priority interest in the personal property; however, the extent of that interest remains in dispute. An Order consistent with this Opinion will be issued.