2003 OK 64

**FIRST BETHANY BANK & TRUST, N.A., a National Banking Association, Plaintiff/Appellee,**

v.

**ARVEST UNITED BANK, a State Savings Bank, Defendant/Appellant.**

No. 97,310.

Supreme Court of Oklahoma.

June 24, 2003.

As Corrected July 2, 2003.

Margaret E. Travis, Kline, Kline, Elliott, Castleberry & Bryant, P.C., Oklahoma City, Oklahoma, and Peter G. Pierce, Bethany, Oklahoma, for Appellee.

Mitchell D. Blackburn and Kiran A. Phansalker, Conner & Winters, P.C., Oklahoma City, Oklahoma, for Appellant.

HODGES, J.

## I.  ISSUE

¶ 1 The dispositive issue presented for our review is whether title 12A, section 9–312(4) of the 1991 Oklahoma Statutes, the law applicable to this appeal, allows an exception to section 9–312(5)'s first-to-file priority rule for a purchase money security interest (PMSI) in accounts receivable.  It should be noted that the Oklahoma Commercial Code (OCC), which is based on the Uniform Commercial Code (UCC), was amended in 2001 to clarify that a PMSI in accounts receivable is not entitled under the current law to super-priority status. Okla. Stat. tit. 12A, § 1–9–324(a) (2001).

## II.  FACTS

¶ 2 This case involves Article 9 of the OCC. Syntrix Financial Solutions, Inc. was in the business of factoring accounts receivable. "Factoring is the direct sale of accounts receivable at a discount." *United States v. Drake*, 932 F.2d 861, 863 (10th Cir.1991).

¶ 3 First Bethany Bank (First Bethany) loaned financing money to Syntrix.  On March 20, 1997, First Bethany Bank perfected its security interest in Syntrix's existing and after-acquired accounts receivable, general intangibles, and the proceeds thereof by filing a financing statement.  On March 2, 2000, First Bethany filed a statement to continue the effectiveness of its previous financing statement.

¶ 4 In April of 1998, Arvest United Bank (Arvest) extended loans to Syntrix to purchase two particular accounts receivable.  To secure the loans, Syntrix gave Arvest a security interest in the two accounts receivable. Arvest filed a financing statement to perfect its security interest.  Okla. Stat. tit. 12A, §§ 9–302–303 (1991).  Syntrix used the account debtors' payments to repay the loans to Arvest.  After Syntrix filed bankruptcy, First Bethany sought to recover the payments Syntrix had made to Arvest.

## III.  PURCHASE MONEY SECURITY INTEREST

¶ 5 Arvest argues that under title 12A, section 9–312 Oklahoma 1991 Statutes, its PMSIs have priority over First Bethany's security interests.  A PMSI is defined in section 9–107 as a security interest that is

(a) taken or retained by the seller of the collateral to secure all or part of its price; or

(b) taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used.

Pursuant to this definition, the parties do not contest that Arvest has PMSIs in the two accounts receivable for which it loaned Syntrix money.  However, Arvest's PMSIs do not automatically have priority over First Bethany's filed security interest.

¶ 6 The general rule under the OCC is "[c]onflicting security interests rank according to priority in time of filing or perfection," whichever is earlier.  Okla. Stat. tit. 12A, § 9–312(5) (1991).  Section 9–312 allows exceptions to this general rule for PMSIs in inventory and PMSIs in collateral other than inventory.  However, the PMSI holder must meet certain requirements in order for its security interest to qualify for section 9–312's superpriority status. *Id.* at § 9–312.

## IV.  ACCOUNTS RECEIVABLE AS COLLATERAL OTHER THAN INVENTORY

¶ 7 Arvest argues that section 9–312(4) applies.  Section 9–312(4) gives a PMSI hold-

er in collateral other than inventory and in the collateral's proceeds priority over an earlier filed conflicting security interest if the PMSI "is perfected at the time the debtor receives possession of the collateral or within ten (10) days thereafter." Because accounts receivable are intangible, a conflict arises over whether they can be possessed and, if they can be possessed, when possession occurs.

¶ 8 Even though the OCC does not explicitly define possession, it is implicit in Article 9 that possession means actual physical control. *See id.* at §§ 9–302–305; *Central Washington Bank v. Mendelson–Zeller, Inc.,* 113 Wash.2d 346, 779 P.2d 697, 699 (1989); Jeanne L. Schroeder, Some Realism about Legal Surrealism, 37 Wm. & Mary L.Rev. 455, 489, 491 (1996). Because accounts receivable are intangibles, *see* Okla. Stat. tit. 12A, § 9–106 (1991), and incapable of being possessed, *Central Washington Bank,* 779 P.2d at 699, PMSIs in accounts receivable are not subject to section 9–312(4)'s super-priority status.

¶ 9 This result is consistent with the history of and current amendments to the OCC and the UCC. Traditionally the law addressed only PMSIs in goods. Grant Gilmore, The Purchase Money Priority, 76 Harv. L. Rev, 1333, 1372 (1963). In 1963, Grant Gilmore, one of the primary drafters of the UCC, stated that "it is almost impossible to conceive of a situation, other than the kind which practitioners refer to as 'academic,' in which intangible money claims could be made the subject of a purchase money transaction." *Id.* Then recent amendments, which are intended as declaratory "unless a change has been clearly made," Okla. Stat. tit. 12A, § 11–107 (2001), clarify that section 9–312(4)'s super-priority status is not available for accounts receivable. *Id.* at § 1–9–324(a).

¶ 10 This result is also consistent with other provisions of the 1991 OCC addressing accounts receivable. Except for a *de minimis* exclusion, a security interest in accounts receivable could be perfected only by filing. *Id.* at § 9–302 (1991). It is illogical that the drafters of the UCC would give a super-priority to a PMSI in accounts receivable by possession when a security interest in accounts receivable can be perfected only by filing. In contrast, a security interest in goods can be perfected by possession, *id.* § 9–305, and a PMSI in goods can be subject to section 9–312(4)'s super-priority status. *Id.* at § 9–312(4).

¶ 11 Arvest argues that the comments to the UCC, the policies underlying the OCC and the UCC, comments of one of the UCC's drafters, and cases from other jurisdictions support a holding that a PMSI in accounts receivable may be subject to section 9–312(4)'s super-priority status. We are unaware of any case granting section 9–312(4)'s super-priority status to accounts receivable. Further none of the cases cited by Arvest have held that a PMSI in accounts receivable is subject to section 9–312(4)'s super-priority status. *See First Interstate Bank of Utah v. IRS,* 930 F.2d 1521 (10th Cir.1991) (Loans that were made to allow debtor to perform preexisting executory contracts could not create a PMSI. A PMSI "in intangibles would be an extraordinary situation."); *MBank Alamo Nat'l Ass'n v. Raytheon Co.,* 886 F.2d 1449, 1452 (5th Cir.1989) (Addressing a PMSI in inventory, the court held that "a PMSI in inventory is limited to that inventory" and to "proceeds received on or before delivery."); *TIFCO, Inc. v. U.S. Repeating Arms Company,* 67 B.R. 990, 997 (Bkrtcy. D.Conn.1986) (The case involved unearned prepaid insurance premiums which were not governed by Article 9 of Maryland's Commercial Code.); *Citizens Nat'l Bank of Denton v. Cockrell,* 850 S.W.2d 462 (Tex.1993) (This case involved equipment, not accounts receivable. The court held that even though seller retained access to equipment, the buyer had physical control and, thus, possession.); *Automated Bookbinding Services, Inc. v. Hans Mueller Corp.,* 471 F.2d 546, 552 (4th Cir.1972) (Regarding equipment, the Court held that a buyer receives possession on the date of delivery, not the date installation is completed.); *Northwestern Nat'l Bank Southwest v. Lectro Systems,* 262 N.W.2d 678, 680 (Minn.1977) (Collateral for purposes of a PMSI does not include the performance of a preexisting contract.)

¶ 12 Arvest's position would require that this Court define possession in a manner that is inconsistent the OCC's implicit meaning. The OCC provides two methods of notice of a security interest: one is physical possession, *id.* at § 9–305, and the other is constructive possession by filing. *Id.* at § 9–302. The OCC uses the term "possession" for physical possession, *id.* at § 9–305, and the term "filing" for constructive possession. *Id.* at § 9–302. Under Arvest's position, the terms would be synonymous.

## V. ACCOUNTS RECEIVABLE AS INVENTORY

¶ 13 Section 9–312(3) bestows super-priority status for PMSIs in inventory. However, we need not determine for the purposes of this appeal whether the two accounts receivable were inventory. Under section 9–312(3), the holder of a PMSI in inventory has priority over a conflicting security interest and the identifiable cash proceeds thereof if, among other things, the holder of the PMSI gives written notice to the conflicting security interest holder. Arvest did not give First Bethany written notification as required by section 9–312(3). Even if the accounts receivable are inventory, First Bethany's security interest has priority over Arvest because Arvest failed to give notice. *Id.* at § 9–312(5).

## VI. CONCLUSION

¶ 14 Because section 9–312 does not allow a super-priority for PMSIs in accounts receivable, conflicting security interests in accounts receivable are subject to the general rules of priority under which the first perfected security interest has priority over a later perfected security interest. *Id.* at § 9–312(5). Because First Bethany perfected its security interests in the two accounts receivable first, it is entitled to the proceeds thereof which are held by Arvest. Summary judgment is proper where, as here, there is no dispute of material fact. Okla. Stat. tit. 12, ch. 2, app. 1, rule 13 (2001). Thus, the district court correctly granted summary judgment to First Bethany, and its judgment is affirmed. The Court of Civil Appeals' opinion is vacated.

COURT OF CIVIL APPEALS' OPINION VACATED; DISTRICT COURT'S JUDGMENT AFFIRMED.

¶ 15 WATT, C.J., OPALA, V.C.J., LAVENDER, HARGRAVE, SUMMERS, BOUDREAU, WINCHESTER, JJ., concur.

¶ 16 KAUGER, J., concurs in result.